ORLANDO MONROE, Respondent, *v.* METROPOLITAN STREET RAILWAY COMPANY, Appellant.

*Negligence — a motorman is not negligent in accelerating the movement of the car before the rear end thereof has reached the point where a person intending to board it stands.*

A motorman of an electric street car, who, while the car is slowly approaching a street corner, observes a person who desires to become a passenger signaling him to stop, is not bound to assume that the intending passenger will attempt to board the car until it has actually stopped, and no negligence can be imputed to the motorman if he accelerates the speed of the car before it has actually stopped and before the rear thereof has reached the place where the intending passenger is standing, unless, at the time he increases the speed of the car, he sees that the intending passenger is then attempting to board it.

APPEAL by the defendant, the Metropolitan Street Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 3d day of June, 1902, upon the verdict of a jury for $7,500, and also from an order entered in said clerk's office on the 3d day of June, 1902, denying the defendant's motion for a new trial made upon the minutes.

*Charles F. Brown,* for the appellant.

*Frederick Hulse,* for the respondent.

INGRAHAM, J.:

The plaintiff testified that, on the afternoon of May 26, 1899, at about four o'clock, at the corner of One Hundred and Sixth

street and Amsterdam avenue, he signaled to the motorman upon one of the defendant's cars approaching from the north; that in answer to the signal the motorman nodded his head; that as the car crossed One Hundred and Sixth street it slowed up until it had nearly stopped; that as the car was slowly moving the plaintiff attempted to step upon the platform when the car started with a jerk, throwing him off and breaking his leg; that the car was one of the half-open and half-closed cars, the open part toward the south, the direction in which the car was going; that it was at the last seat of the open part of the car that the plaintiff tried to get on; that as he tried to get on he took hold of the handrail with his right hand, putting his foot on the footboard, when the car started with a jerk and threw him off. Upon cross-examination the plaintiff testified that when he first gave his signal to the motorman to stop the car was about midway between the north and south sides of One Hundred and Sixth street; that the car was slowing up when he gave the signal; that it continued to slow up until he attempted to board it; that at that time the rear of the car had got to the south corner of One Hundred and Sixth street, and the witness was standing between five and eight feet south of the south corner of One Hundred and Sixth street, and it was at that point that he stepped upon the car; that he attempted to get on while the car was slowly moving at what the witness called "a very slow walk;" that the rear of the car had not then come to where the plaintiff stood, but had come to the south corner of One Hundred and Sixth street; that he did not notice the conductor and could not tell where he stood; that all he noticed was the motorman; that he saw the motorman looking behind over his right shoulder to see if the plaintiff was getting on the car. A police officer called for the plaintiff testified that he noticed the car stopping on the south side of One Hundred and Sixth street and a man getting off; that the plaintiff got on the car, and the car started up, and he fell to the street; that he did not see anything in regard to the motorman and conductor; that he saw the plaintiff walk out from the sidewalk to board the car; that he stopped ten to fifteen feet south of the crosswalk. Another witness, who was a passenger on the car, testified that as the car came toward One Hundred and Sixth street it slowed up, and at the south side of One Hundred and Sixth street it came almost

to a stop; that the witness noticed a man take hold of the bar and attempt to get on the car; that he had one foot on the car when the car suddenly started with a jerk and threw the plaintiff off; that after the accident the conductor rang three bells; that the car slowed up after it passed to the north side of One Hundred and Sixth street and continued to go slower as it crossed the street; that it had got almost to a standstill at a little below One Hundred and Sixth street, but that the car was still moving when the plaintiff attempted to board it; that from the time the plaintiff first attempted to board the car until he was thrown off was about five seconds, and during that time the car moved from three to five feet.   On behalf of the defendant, the motorman testified that in crossing this street he remembers getting three bells, and that he stopped the car immediately and then walked back to see what the matter was and saw the plaintiff in the street; that he did not recollect seeing any one at the corner before he received the three bells, as he was then busy putting the power off; that no one made a signal to him standing upon the track as he approached the south corner of One Hundred and Sixth street; that just south of the corner of One Hundred and Sixth street there was a break in the electrical conductor at which place there was no possibility of putting power on the car; that before approaching that break the power is taken off and the momentum of the car carries it over this space; that when the witness got three bells to stop, the car was about fifty feet past One Hundred and Sixth street; and he then stopped the car as soon as possible.

In all this evidence there is no reference to the conductor, and no act of his contributed in any way to the accident; nothing to justify the jury in finding that the conductor was negligent.   The question as to the defendant's negligence depended upon whether or not the motorman saw the plaintiff when he attempted to board the car and, knowing of that fact, applied the power which caused the jerk that threw the plaintiff from the car.   It would seem that if the testimony of the plaintiff and his witnesses is true as to his position at the time that he says the car started, it would be impossible for the car to start, as at that time it was over the portion of the track at which there was a break in the electrical conductor, so that it was then impossible to apply power to the car.   But assuming that there was a question for the jury as to the negligence of the motorman, there

was certainly no evidence to justify a finding that the conductor was negligent. In submitting the case to the jury the learned trial judge instructed them that "if the company while he (plaintiff) was in the act of getting on board did not start up the car with a sudden jerk and thereby throw him off — there is no liability upon this company;" that the jury were in the first place to determine whether or not this accident was solely caused by the negligence of the defendant. At the end of the charge counsel for the defendant asked the court: "Does your Honor think there is any evidence here of any negligence on the part of the conductor? I think you left that to the jury;" to which the court answered, "I did." Counsel for the defendant then excepted to the court's leaving to the jury any question of negligence on the part of the conductor, on the ground that no negligence on his part was shown, to which the court replied, "You may take an exception."

I think this was clearly error. There was here a distinct instruction to the jury that they could find for the plaintiff if they found that the conductor was negligent, when there is no testimony in the case to sustain a finding against the defendant upon that ground. Counsel for the defendant further asked the court to charge that "the slowing up of this car as it approached 106th street was not an invitation to the plaintiff to board it before it stopped." That the court declined, to which counsel excepted.

Counsel for the defendant further asked the court to charge that "unless the motorman saw the plaintiff attempting to board the car, the defendant is not chargeable with negligence for any starting forward of the car, if any such took place, unless the motorman saw the plaintiff attempting to board the car when he was attempting to board it." That the court declined to charge, and the defendant excepted. Assuming that the motorman saw the plaintiff when he gave the signal to stop, he could not assume that the plaintiff would attempt to board the car until it had actually stopped, and there was no invitation to enter the car that would make it negligent for the motorman to start it ahead again until the car had actually come to a full stop. If the motorman looked around and saw the plaintiff attempting to board the car, and while the plaintiff was making that attempt, although the car had not come to a full stop, suddenly started it forward, that would be evidence which would sustain the

charge of negligence; but the mere fact that the motorman saw the plaintiff waiting to board the car, and instead of stopping before the rear of the car had reached the position at which he stood, the motorman started it forward, having no notice that the plaintiff would attempt to board the car until it had come to a full stop, there was no negligence to sustain the verdict of the jury.

Without deciding the other questions in the case, I think these errors require us to reverse the judgment.

The judgment and order appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., PATTERSON and LAUGHLIN, JJ., concurred; HATCH, J., concurred in result.

Judgment and order reversed, new trial granted, costs to appellant to abide event.